CASE NO. 24-12159-H

IN THE UNITED STATES COURT OF APPEALS FOR THE
ELEVENTH CIRCUIT

LOWER TRIBUNAL CASE NO. 22-cv-20738

**DAMON PETERSON**,

Petitioner/Appellant,

-vs-

**SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS**

Respondent/Appellee.

---

**MOTION FOR CERTIFICATE OF APPEALABILITY**

---

APPEAL FROM THE SOUTHERN DISTRICT OF FLORIDA

---

Daniel Tibbitt
Law Offices of Daniel J. Tibbitt, P.A.
1175 NE 125th Street, Suite 404
North Miami, FL 33161
(305) 384-6160
dan@tibbittlaw.com
Florida Bar No. 816361

Counsel for Appellant

# CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

1. Diamond, Cristina (Esq.)

2. Diaz, Veronica (Hon.)

3. Emas, Kevin (Hon.)

4. Gayles, Darrin, (Hon.)

5. Katz, Linda (Esq.)

6. Lobree, Fleur (Hon.)

7. Morales, Rachel (Esq.)

8. Peterson, Damon

9. Scales, Edwin (Hon.)

10. Seff, Flora (Esq.)

11. State of Florida

12. Tibbitt, Daniel (Esq.)


Undersigned counsel certifies that to my knowledge no publicly traded company or corporation has an interest in the outcome of this appeal.

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

DAMON PETERSON

      Petitioner/Appellant

v.

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS

      Respondent/Appellee


## MOTION FOR A CERTIFICATE OF APPEALABILITY

Appellant, Damon Peterson, through undersigned counsel, respectfully requests that this Court issue a certificate of appealability and permit him to appeal the merits of the District Court's denial order in this case.

Citations are to the appendix filed together with this motion, which is the pleadings in the district court other than the appendix. Appellant is not filing with this Court at this time the voluminous state court records to which those pleadings refer, but they are available in the appendix filed in the District Court and upon request can be filed with this Court. Of course, if the certificate of appealability is granted Appellant would file the relevant documents as an appendix to the initial brief.

# INTRODUCTION

Damon Peterson was 16 years old in 1993 when he was charged in Miami-Dade County, Florida state court with first-degree felony murder. He pled guilty to avoid the death penalty, which at the time was permitted for juveniles.[1] He was sentenced to life in prison. All parties at the time expected that due to Florida's parole system as it then existed,[2] Damon would be released from prison, or at least "seriously consider[ed]" for release, after twenty-five years, which would have been in 2018. App'x A p. 2. That did not happen. Damon has now been in prison for 31 years.

The remnants of Florida's parole system that still exist after its abolishment include a commission that issues a presumptive parole release date, which for Damon is 2060, when he would be 84 years old, well past any average life expectancy, let alone that of an African-American male prison inmate. The one-page parole record in this case conclusively demonstrates that Damon will never be released solely due to factors relating to the crime he committed when he was 16. Those static factors alone mean he will not be considered for release until 2055, when he will be 79 years old, also past his life expectancy. Despite exemplary behavior in prison[3] and a truly

_____

[1] The juvenile death penalty was found unconstitutional in *Roper v. Simmons*, 543 U.S. 551 (2005).

[2] Parole was abolished in Florida in 1994, one year after this case occurred.

[3] He has been in prison for 27 years (since 1997, after 4 years in the Miami-Dade County Jail), and has received six disciplinary reports. None are violent. The last

horrific childhood prior to the crime,[4] he is serving mandatory life with no meaningful opportunity for release. Because the United States Supreme Court has found the Eighth Amendment requires that juvenile homicide offenders in his situation not be sentenced to mandatory life and be given a meaningful and realistic opportunity for release, after exhausting his state remedies he filed a federal habeas petition pursuant to 28 U.S.C. § 2254 and then this appeal.

## LEGAL STANDARD

> To obtain a COA under [28 U.S.C.] § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot* [*v. Estelle*, 463 U.S. 880 (1993)], includes showing that reasonable jurists could debate whether (or, for that matter,  agree that) the petition should have been resolved in a

_____

one was in 2012. This is a remarkable record for any inmate, let alone a life-sentenced inmate housed with other life-sentenced inmates who often feel they have nothing to lose.

[4] His mother was addicted to crack and was in a constant stream of relationships with abusive drug-addicted men. His father was never in his life. He never had a stable home. He never had sufficient clothes and food unless he stole them. He regularly bathed by sneaking into people's backyard swimming pools. He regularly slept in parks. He often could not go to school because he has no clothes that were not soiled. When he was 13, he was evaluated by a clinical psychologist (Walter Reid) who noted that Damon was a child worth "cultivating" who "does not have the kind of cold, stoic indifference to what happens to him as so many" juvenile offenders display. Damon told Dr. Reid his mother was a crack user who paid him no attention. Shockingly, 13-year old Damon even told the authorities that he wanted to be put in foster care. A dependency case was never opened. Throughout his childhood whenever Damon was in a juvenile program due to property crimes he committed, he thrived and got glowing write-ups. Then he would be released back to his mother and the streets, and the cycle would restart, up until this crime at age 16. App'x A p. 12. Undersigned counsel submits that nobody could review the juvenile records in this case and fail to conclude that Damon Peterson was a child neglected at every level.

different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" *Barefoot*, 463 U.S. at 893, and n. 4 ("summing up" the "'substantial showing'" standard).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 539 U.S. 473, 483-84 (2000).

## PROCEDURAL AND FACTUAL BACKGROUND

In 2016 Damon Peterson filed a motion to correct illegal sentence in state court, based on the Florida Supreme Court holding in *Atwell v. State*, 197 So.3d 1040 (Fla. 2016) that juvenile life with parole sentences were illegal because Florida's parole system "does not provide for individualized considerations of [the defendant's] juvenile status at the time of the murder, as required by *Miller* [*v. Alabama*, 567 U.S. 460 (2012)]". The State agreed that the sentence was illegal and that Damon was entitled to be resentenced, but over defense objection successfully convinced the state judge to wait to conduct that resentencing until after a 2017 parole interview, to see what the parole commission would do. What the commission did was reject the commission investigator's recommendation of a release date in 2027 and set a presumptive parole release date (PPRD) of 2060, when Damon will be 83 years old.[5]

---

[5] Appellant requested an evidentiary hearing both in state court and in federal district court below, and was denied. The purpose of the evidentiary hearing would have been

The parole commission report is reproduced on the next two pages for ease of reference. It shows that the commission added different amounts of months than the investigator for the exact same factors, and that the release date of 2060 was determined almost entirely by static factors relating to the crime itself. The only exception was 60 months (five years) added for "unsatisfactory institutional conduct", although this is not explained and the objective fact is that Damon has had six disciplinary reports in his entire prison stay, none of them violent, and the most recent one in 2012. Even subtracting those five years, the release date would be 2055, the year Damon would turn 79, which is still past his actuarial life expectancy. The document speaks for itself—based solely on the facts of the crime itself, and without any individualized consideration of Damon, his youth, or any mitigation, he will not be released within his lifetime.

INTENTIONALLY LEFT BLANK DUE TO GRAPHICS ON NEXT PAGES

---

to have evidence presented as to how the parole commission works and how it arrived at this PPRD. The parole commission does not even see the inmates whose release date it controls—instead it has an investigator see them and reviews the investigator's recommendation—here adding 33 years to it without even setting eyes on Damon.

FLORIDA COMMISSION ON OFFENDER REVIEW



## PRESUMPTIVE PAROLE RELEASE DATE COMMISSION ACTION

Inmate Name: __Peterson, Damon__    DC #: __196657__    Date of Interview: __10/16/2017__

Institution: __Tomoka CI__

I. **COMMISSION INVESTIGATOR'S RECOMMENDATIONS:**
  A. Eligible for parole consideration: NO☐ If no, state reason(s):

  IF YES☒, THEN:
  B. Salient Factor Score: 1=__0__, 2=__0__, 3=__0__, 4=__0__, 5=__0__, 6=__1__, TOTAL __1__ or RCF_____.
  C. Offense Severity: __6__ Case No. __93-10518: First Degree Murder__.
  D. Matrix Time Range: __90-135 YO (set at top of range)__.
  E. Aggravating/Mitigating Factors *(Explain each with source):*
  1) Multiple Separate Offenses: Case # 93-10518, Count 2: Attempted Armed Robbery (2F)    (+ 25 months)
  2) Multiple Separate Offenses: Case # 93-10518, Count 3: Unlawful Possession of a Firearm While Engaged in a Criminal Offense (2F)    (+ 24 months)
  3) Multiple Separate Offenses: Case # 93-12155, Count 1: Burglary with Assault or Battery Therein While Armed (LIFE)    (+ 100 months)
  4) Multiple Separate Offenses: Case # 93-12155, Count 3: Shooting or Throwing Deadly Missile (2F)    (+ 24 months)
  5) Multiple Separate Offenses: Case # 93-12155, Count 4: Aggravated Assault with a Firearm (3F)    (+ 20 months)
  6) Multiple Separate Offenses: Case # 93-12155, Count 5: Possession of Burglary Tools (3F)    (+ 20 months)
  7) The offense involved the use of a firearm, a .38 caliber semi-automatic pistol, source: Post Sentence Investigation    (+ 60 months)

  F. Time Begins: __4/13/1993__ G. Months Recommended: __408__ H. Recommended Presumptive Parole Release Date: __4/13/2027__.

II. **COMMISSION ACTION:**
  A. The Commission AFFIRMS the commission investigator's recommendation that you are NOT Eligible for consideration for parole. You will be scheduled for an initial interview _____.
  B. The Commission does NOT affirm the commission investigator's recommendation that you are not eligible for parole consideration and remands the case back to the field for an immediate presumptive parole release date interview and recommendation.
  C. The Commission AFFIRMS, without change, the commission investigator's recommended presumptive parole release date and thereby affirms any aggravating or mitigating factors found above in I.E.
  D. The Commission does NOT affirm the commission investigator's recommended presumptive parole release date and restructures the case as follows:
  1. Salient Factor Score: 1=__0__, 2=__0__, 3=__0__, 4=__0__, 5=__0__, 6=__1__, TOTAL __1__ or RCF_____.
  2. Offense Severity: __Level 6__ Degree: __Capital Felony__ Offense: __Ct. 1 First Degree Murder__    Case No. __93-10518__.
  3. Matrix Time Range: __90-135 (Youthful Offender)__.    Set at: __135 months__
  4. Aggravating/Mitigating Factors *(Explain each with source):*
  1. Multiple separate offense Case #93-10518 Ct. 2 Attempted Armed Robbery.    120 months
  2. Multiple separate offense Case #93-10518 Ct. 3 Unlawful Possession of a Firearm While Engaged in a Criminal Offense.    72 months
  3. Multiple separate offense #93-12155 Ct. 2 Armed Robbery.    180 months
  4. Multiple separate offense Case #93-12155 Ct. 3 Shooting or Throwing a Deadly Missile.    120 months
  5. Multiple separate offense Case #93-12155 Ct. 4 Aggravated Assault with a Firearm.    60 months
  6. Multiple separate offence Case #93-12155 Ct. 5 Possession of Burglary Tools.    60 months
  7. Unsatisfactory institutional conduct as evidenced by his processed disciplinary record.    60 months

Certified by __Sally M. Daw__ _____, Commission Clerk, and mailed on this 20th day of January, 2018.
Number (2) of visitors

1 copy to inmate; 1 copy to institution file; original to Central Office file.
MH

8



Page 2
Peterson, Damon
DC#196657

5. Time Begins: **4/13/1993**         6. Months for Incarceration: **807 months**.

**At the Commission meeting held on 12/20/2017 your Presumptive Parole Release Date was ESTABLISHED to be 7/13/2060.**
**You will be reinterviewed for your subsequent interview during the month of August, 2024.**

The Commission finds that your next interview date shall be within **7 years** rather than within **2 years,** from your last interview based on your conviction/sentence for **First Degree Murder** and the Commission's finding that it is not reasonable to expect you will be granted parole during the following years. The basis for the finding is as follows.

1. Unsatisfactory institutional conduct
2. Use of a firearm
3. Unreasonable risk to others
4. Multiple separate offenses

*The Commission considered mitigation



After this parole commission action, the prosecutor said the State would be offering to reduce the life sentence to a "term of years plea" but had not decided on an exact offer. (App'x A pp. 11-12). They never actually made any offer, despite extensive mitigation and meetings between undersigned counsel and various Assistant State Attorneys, and the case was set for the resentencing Damon was entitled to pursuant to *Atwell*. Eight days before the resentencing, the Florida Supreme Court issued *Franklin v. State*, 258 So.3d 1239 (Fla. 2018) which overruled *Atwell* and found that a juvenile life sentence with a PPRD in 2352 was legal. The State then successfully argued the resentencing should not occur. The defense argued

in state court that Damon's sentence violated the United States Supreme Court's *Miller* and *Graham* decisions as the commission report demonstrated that in this case the parole document showed there was no meaningful opportunity for release in his lifetime based on rehabilitation. (App'x A pp. 14-15). The state court denied relief.

The defense appealed to the Third District Court of Appeals, raising the same grounds raised in this habeas petition. The state appellate court affirmed, citing cases including *Franklin* but without a written opinion. (App'x A pp. 15-18).

As the Florida Supreme Court will not review cases without a written opinion, there was nothing further Damon could do on this issue in state court. He then filed the § 2254 petition at issue in this appeal. (App'x A). The defense argued that, as applied in this case based on the parole records, *Graham* and *Miller* are being violated because "[t]he possibility of being released at the earliest on a date past [Damon Peterson's] life expectancy, when he can prove that date was arrived at based only on the facts of the crimes, denies him the meaningful opportunity for release to which the United States Supreme Court has squarely said he is constitutionally entitled. (App'x A p. 26). He argued the parole records were clear and if the Court found otherwise it should set an evidentiary hearing where Petitioner would prove through witnesses from the parole commission that the parole determination was based on static factors about the crimes no rehabilitation can change. (App'x A pp. 26-27). He also argued that the records demonstrate that the parole decision in this case was arbitrary and capricious, because, for example, it treats armed robbery more severely

than first-degree murder and provides no explanation for how the parole commission arrived at completely different point/month values for the same charges than did the parole examiner, resulting in a release date over three decades later than the examiner recommended. (App'x A pp. 23-25).

The State filed a response to the § 2254 petition arguing that Florida law is that parole-eligible life sentences for juveniles are legal even if a PPRD is past a defendant's life expectancy, and that no federal law says different. (App'x B).

The defense filed a Reply, arguing that what is required is not the formalistic ritual of holding a parole hearing and issuing a PPRD but an actual meaningful opportunity for release, which does not exist here. (App'x C).

Judge Gayles then issued his order denying relief. (App'x D). That order states that *Miller* and *Graham* do not apply to juvenile life with parole sentences, and even if they do, since Appellant had a parole interview and received a PPRD he has a meaningful opportunity for relief. (App'x D pp. 7-10). And, the district court says, even if there was no meaningful opportunity for relief that would be permissible under *Miller* because the parole commission considered Damon's youth by using a youthful offender matrix to score his felony murder charge. (App'x D pp 10-11). Finally, even if the parole commission considered only static factors about the crime, per the District Court that would be lawful because *Miller* deals with sentences imposed by a court, not parole commission decisions. (App'x D p. 11). The District Court denied an evidentiary hearing and denied a certificate of appealability. (App'x D pp. 16-17).

This appeal follows.

# ARGUMENT.

The United States Supreme Court, in *Graham v. Florida*, 560 U.S. 48 (2010) and then in *Miller v. Alabama*, 567 U.S. 460 (2012) created a sea change in how the American criminal justice system deals with children who commit serious felony offenses. Before, those children could be and often were treated just like adults. *Graham* and *Miller* say that is wrong because children are not just physically different from adults, they are mentally and psychologically different. Their actual brains are different. *Miller* at 471-72. They lack maturity, have an "underdeveloped sense of responsibility", are "more vulnerable or susceptible to negative influences and outside pressures", and have characters that are "not as well formed". *Graham* at 68, *quoting Roper v. Simmons*, 543 U.S. 551, 575 (2005). Thus, their transgressions are "not as morally reprehensible as that of an adult". *Graham* at 68, *quoting Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988). *Miller* held the Eighth Amendment bars mandatory life without parole sentences even for juvenile murderers. The basic takeaway of these cases is that "[w]hat the State must do . . . is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham* at 75. "A state need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id.* at 82.

Florida responded to *Graham* and *Miller* by, as required, eliminating mandatory juvenile life sentences. Parole had been abolished in Florida in 1994, so every juvenile first-degree murder offender whose crime occurred thereafter had been sentenced to life in prison without the possibility of parole.[6] They were all resentenced since the Florida Supreme Court found that *Graham* and *Miller* applied retroactively. *Falcon v. State*, 162 So.3d 954 (Fla. 2015).

The Florida legislature also created a new procedure for sentencing juvenile offenders which explicitly requires consideration of "the defendant's youth and attendant circumstances", including their "age, maturity, intellectual capacity, and mental and emotional health at the time of the offense", "[t]he defendant's background, including his or her family, home, and community environment", [t]he effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment", and various other factors. Fla. Stat. § 921.1401. The legislature also created judicial review of juvenile sentences that exceed various thresholds, at the latest after 25 years. Fla. Stat. § 921.1402. Damon's sentence was not imposed with any judicial consideration of his youth as he pled to life to avoid the death penalty, and he never has and never will receive a judicial review.

Reasonable jurists would find the District Court decision in this case fairly debatable, and therefore this Court should issue a certificate of appealability to allow

---

[6] In Florida, first-degree murder is punishable by life in prison (without parole, which no longer exists) or the death penalty. Fla. Stat. §§ 782.04(1)(a), 775.082(1)(a).

full briefing and argument on the important question presented. That question is whether it is unconstitutional based on the United States Supreme Court's *Miller* and *Graham* decisions to sentence a juvenile to life with parole **when the parole documents conclusively demonstrate he will not be released within his natural life expectancy based solely on the facts of the crime**.

Here, the parole commission document shows that they assigned 135 months for the first-degree murder as a youthful offender, which as the District Court points out is a recognition Damon was a juvenile as to the primary offense. However, the District Court does not acknowledge that the commission added 192 months for two other counts on the first-degree murder case and then 420 months for a separate armed robbery case where there was no death, without any accounting for youth. That is a total of 747 months, or 62.25 years.[7] There is no explanation for where those numbers come from, and they greatly exceed what the parole examiner assigned for the same offenses. The bottom line is that it is clear from the record that the Florida Commission on Offender Review has determined that, based solely on the facts of his cases, Damon will not be released within his expected lifetime. Even without the institutional conduct factor, the release date would be in 2055, the year Damon would

---

[7] Another 60 months or 5 years come from supposedly "unsatisfactory institutional conduct". Although Appellant vigorously disagrees that this label can accurately be applied to Damon, he recognizes this Court cannot make that determination. Deferring to the commission on this issue still results in a release date past Damon's life expectancy based solely on the facts of the crime.

be turning 79 if alive. The natural life expectancy of an American male born in 1976 per the Social Security Administration is 69.1 years.[8] For Black men like Damon it is 62.4 years per the Centers for Disease Control.[9] Long term incarceration decreases life expectancy. *See, e.g., United States v. Taveres*, 436 F.Supp.2d 493, 500 (E.D.N.Y. 2006) ("Life expectancy within federal prison is considerably shortened."). The 2055 release date based solely on the static factors related to his crime is clearly well past Damon's life expectancy.

Judge Gayles certainly fairly engaged with this case and entered a well-reasoned order. However, reasonable jurists could disagree about the conclusions of that order. The United States Supreme Court says that children convicted of a crime must receive a meaningful, realistic opportunity for release within their lifetime based on demonstrated rehabilitation. *Graham* at 75. The United States Supreme Court says that even children who have taken a life cannot be sentenced to mandatory life without a realistic possibility of release, and that any juvenile life sentence can only be imposed after serious consideration of the child's age, maturity, and ultimately how children are fundamentally different than adults and should practically never be sentenced to life in prison. *Miller* at 481. But Damon is serving a life in prison sentence that was mandatory and was imposed without any consideration of his

---

[8] https://www.ssa.gov/OACT/TR/TR02/lr5A3-h.html
[9] https://www.cdc.gov/nchs/data/hus/2017/015.pdf

youth.[10]  And in black-and-white the State of Florida has told Damon that no matter who he was as a 16-year-old boy, no matter what factors contributed to his commission of these crimes, no matter what rehabilitation he has undergone in his now-31 years of imprisonment, he will not be released within his expected lifetime, based solely and entirely on the facts of his crimes.[11]  A reasonable jurist could find those facts to be contrary to, or an unreasonable application of, clearly established law from the United States Supreme Court.

The District Court says that neither *Miller* nor *Graham* dealt with a juvenile murderer who is eligible for parole, and essentially that is the end of the matter.  The facts do not need to be identical for federal habeas relief to lie.  One reason we know that reasonable jurists could disagree on this issue is that reasonable jurists *have* disagreed on this issue.  The 10th Circuit was presented in *Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017) with a juvenile who was sentenced to life with parole, which could not be granted for 131.75 years. *Id.* at 1050.  The Court noted that although this was not a "life without parole" sentence "[t]he Court in Graham focused,

---

[10] Obviously Damon never would have pled to life if the death penalty was not an option, which at the time it was for juveniles.  There is no reason to plead to the maximum possible sentence that could be imposed after trial, so any plea absent the availability of the death penalty would have been to a term of years.

[11] It should be noted that this was not even the intent of the State *at the time of sentencing*.  Everyone thought Damon would be realistically paroled after twenty-five years.  Florida's parole system was subsequently abolished and the remnants of it that remain for pre-1994 offenders like Damon function very differently than they did at the time of this plea.

not on the label attached to the sentence, but on the irrevocability of the punishment . . . The Constitution's protections do not depend upon a legislature's semantic distinctions." *Id.* at 1056. The 10th Circuit granted habeas relief. Although the 131.75 years the legislature said Budder had to serve before parole consideration is more than the 62.25 years the parole commission says Damon has to serve before parole consideration, the salient fact is that for both of them the date at which they will first become eligible for parole consideration is past their life expectancy, and therefore they are not receiving a meaningful, realistic opportunity for release in contravention to Supreme Court precedent.

A case the District Court cited (App'x D pp. 8-9) as post-*Miller/Graham* examples of "similar or harsher sentences" upheld on habeas review in fact help demonstrate how reasonable jurists could disagree on the question presented. In *Starks v. Easterling*, 659 F. App'x 277 (6th Cir. 2016) the defendant claimed that a mandatory life sentence as to which he would be eligible for parole at an advanced age violated the Eighth Amendment and *Miller*. *Id.* at 278. The district court denied his habeas petition but "**granted a certificate of appealability**". *Id.* at 279 (emphasis added). This shows that judge thought reasonable jurists could disagree. And although the Sixth Circuit affirmed in *Starks*, they noted that they believed that the Supreme Court had demonstrated a "growing unease with draconian sentences imposed upon juveniles, even for serious crimes" and it "may well be that the Court one day holds that fixed-term sentences for juvenile offenders that are the functional

equivalent of life without parole are unconstitutional, especially if the sentencing court has not taken the defendant's youth into consideration." *Id.* at 280. The Sixth Circuit denied relief in *Starks* because in their view it was dispositive that the Supreme Court had not "explicitly held that the Eighth Amendment applies to juvenile sentences that are the functional equivalent of life" and "lower courts are divided" on the matter. *Id.* A concurring judge (Judge Helene N. White) found this sentence was a violation of the Eighth Amendment as interpreted by the United States Supreme Court and "violates *Miller*" and that release which would occur at the earliest after a defendant's life expectancy was not a "meaningful opportunity to obtain release". *Id.* at 283-84. Judge White nevertheless concurred in the denial of habeas relief because she found that reasonable jurists could disagree with her conclusion regarding "where to draw the line" given possible parole eligibility at age 68, although she said if parole was after 100 years this would be "an unreasonable application of *Graham* and *Miller*", meaning habeas relief would be appropriate in that scenario. *Id.* at 284. The bottom line from *Starks* is: a) the 6th Circuit reviewed a very similar case to this one after a certificate of appealability was issued; and b) the opinion makes it clear this is a legitimate question over which reasonable jurists could disagree.

Another example of how reasonable jurists could disagree over this issue is the Seventh Circuit's decision in *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016), where the Court considered a 100-year sentence for a juvenile murderer. Like in *Starks*, one

important fact for present purposes is simply that the Seventh Circuit heard the case, indicating they believed reasonable jurists could disagree with the district court denial. In *McKinley*, the Court noted that (like here) the defendant's youth and the other *Miller/Graham* factors were not considered at sentencing. And unlike Judge Gayles here, who found that *Miller* was limited to juveniles sentenced to life without parole, the Seventh Circuit found that the 100-year sentence was a "*de facto* life sentence, and so the logic of *Miller* applies.". *McKinley* at 911. Ultimately the Seventh Circuit remanded for the defendant to exhaust state court remedies, but the case shows that judges disagree on the question presented here—they even disagreed in *McKinley*, which was a 2-1 decision with the dissenting judge

A final example of reasonable jurists disagreeing on this issue is that the Florida Supreme Court decision in *Franklin v. State*, 258 So.3d 1239 (Fla. 2018), which was the state case that found Florida's parole system did not violate *Miller* and *Graham* that was issued days before Damon was going to be resentenced, was a 4-3 split decision. Three Florida Supreme Court justices would have found a sentence with a PPRD past the defendant's life expectancy was a *Miller/Graham* violation. And *Franklin* overruled *Atwell v. State*, 197 So.3d 1040 (Fla. 2016), which was a 4-3 decision the other way.[12]

It is important to briefly note what Appellant does *not* ask for. Appellant at

---

[12] Obviously, the composition of the Florida Supreme Court changed between the issuance of the two cases.

this point is not asking this Court to reverse on the merits (though of course he will ask for that if given the opportunity), he is just asking the Court to grant a certificate of appealability and allow argument and consideration on the merits. And on the merits he will not be asking the Court to find that Florida's parole system is *per se* unconstitutional. He raises an as applied challenge based on the specific parole determination made in his case, where he can show both that the PPRD is well beyond his life expectancy and that this is due *solely* to the facts of the crime based on the parole commission's own document explaining their parole decision.

## CONCLUSION

The sixteen years of Damon Peterson's life prior to this crime demonstrate a shocking spiral of neglect from both his parents and the court system. Just three years before this crime, he begged to be placed in foster care so he could have the support he needed to thrive, and was ignored. This does not excuse the murder he committed at age 16, but it does inform why it happened and per the United States Supreme Court he should have received individualized consideration at sentencing regarding his youth and attendant characteristics, which he did not. In the thirty-one years after sentencing Damon has made truly remarkable strides in personal growth and rehabilitation, and has steadfastly stayed away from the violence that is unfortunately endemic in prisons, especially amongst life-sentence inmates. He has rehabilitated himself more than anybody undersigned counsel has seen in 20 years of criminal

defense practice.

Damon was on the verge of being resentenced, after Florida dragged out that process for years over defense objection, when the Florida law that required that resentencing changed. The State had even said on the record that they would be offering him a term of years sentence, but never did. Hundreds of other juveniles who were sentenced to life with parole before 1994 had their sentences changed to term of years sentences before the Florida Supreme Court reversed itself, but due to no fault of his own, Damon did not. The Florida parole commission has made it abundantly clear that Damon will never be released, since he cannot change the facts of his crimes and those facts alone mean he will be imprisoned until 2055, past his life expectancy, no matter what he does. That is at least arguably in violation of the Eighth Amendment as interpreted by the United States Supreme Court in *Miller* and *Graham*. The Supreme Court has clearly held that a juvenile's status must be considered at sentencing and that states must give them a meaningful opportunity for release upon demonstrated rehabilitation in all but the rarest of circumstances. Yet Damon did not get individualized consideration at sentencing and he is not getting an opportunity for release.

Reasonable jurists could disagree with the District Court decision in this case. Reasonable jurists have found that *Miller* applies to virtually indistinguishable sentences, including on habeas review. This Court should issue a certificate of appealability.

Respectfully submitted,

 /s/ Daniel Tibbitt
Daniel Tibbitt
Daniel J. Tibbitt, P.A.
1175 NE 125th Street
Suite 404
North Miami, Florida 33161
(305) 384-6160
Fl. Bar No: 816361
dan@tibbittlaw.com

## CERTIFICATE OF COMPLIANCE

I HEREBY certify that this motion is less than 5,200 words (the body is 4,579 words) and complies with the formatting requirements of Federal Rules of Appellate Procedure 27 and 32.

s/ Daniel Tibbitt
Daniel Tibbitt

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 17, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and served all persons registered for e-service on CM/ECF.

s/ Daniel Tibbitt
Daniel Tibbitt